James T. Burton (Utah Bar No. 11875)
Shawn T. Richards. (Utah Bar No. 11949)
Analise Q. Wilson (Utah Bar No. 13845)
**KIRTON | McCONKIE**
Kirton McConkie Building, Suite 400
50 East South Temple
P.O. Box 45120
Salt Lake City, Utah 84145-0120
Telephone: (801) 328-3600
jburton@kmclaw.com
srichards@kmclaw.com
aqwilson@kmclaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JULIE YEARSLEY<br><br>Plaintiff,<br><br>vs.<br><br>BROOK THORNLEY, an individual, ROD THORNLEY, an individual.<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 1:16-cv-00060-TS<br><br>Judge Ted Stewart |

Plaintiff Julie Yearsley hereby alleges and complains against defendants Brook Thornley and Rod Thornley (collectively, the "Thornleys"), as follows:

### PARTIES, JURISDICTION AND VENUE

1. Julie Yearsley is an individual residing in Weber County.

2. Brook Thornley is an individual residing in Davis County, Utah.

3. Rod Thornley is an individual residing in Davis County, Utah.

4.     This is a civil action for, among other things, false patent marking under Title 35, United States Code.

5.     Subject-matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1338(a), and 1367.

6.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) as the Thornleys have committed the acts of false patent marking complained of herein in this District and have a regular and established place of business in this District.

## FACTUAL BACKGROUND

7.     Yearsley has created a method of personality profiling called the Social Core Theory.

8.     Yearsley has invested significant time, research, and effort into creating the Social Core Theory of personality profiling.

9.     Yearsley teaches others about her Social Core Theory so that they can understand themselves, their families and co-workers, how colors affect their moods, and how each personality, referred to as "energies", relate to various social situations, movement, thought processes, and spaces.

10.    Yearsley has been featured on Good Things Utah, PCTV and in the Standard Examiner.

11.    Yearsley also uses her Social Core Theory in her work as a cosmetologist and interior designer.

12.    The Thornleys have a competing personality profiling method called Human Art.

13.    In their book entitled, *Human Art: Understanding Your Own Personal Design,* the

Thornleys represent that the Human Art Theory is a "patented method."

14. The Thornleys have contacted Yearsley's clients and contacts at Good Things Utah and have improperly represented to them that Yearsley is infringing on the Thornleys' patent rights ("False Statements").

15. The Thornleys have improperly threatened legal action against those who have worked with and promoted Yearsley.

16. The Thornleys have never been issued a patent in connection with her Human Art Theory and have not pending patent applications.

17. Yearsley's Social Core Theory is unique from Human Art theory and based on independent research.

18. As a result of the Thornleys' misrepresentations, Yearsley has lost clients, promotional opportunities, and has suffered other harms.

19. In at least one instance, the Thornleys contacted a contractor for which Yearsley was performing design services and based on the Thornleys' interference, Yearsley was not allowed to complete the project.

20. Yearsley has been and will continue to be irreparably harmed unless the Thornleys are enjoined by the Court from committing further acts of defamation, tortious interference with economic relations, and false patent marking.

## FIRST CLAIM FOR RELIEF
### False Patent Marking Under 35 U.S.C. §§ 287 & 292

21. Yearsley realleges and incorporates by reference all of the foregoing paragraphs.

22. The Thornleys have marked or marketed their Human Art Theory as a "patented method" or some similar variation thereof claiming patent rights in the Human Art Theory.

23. Yet the Thornleys have no and never have had any patent rights in and to the Human Art Theory.

24. The Thornleys have falsely marked the Human Art Theory for the purpose of deceiving the public and to derive a financial benefit from such deception.

25. The Thornleys are liable for false patent marking under 35 U.S.C. §§ 287 and/or 292.

26. The Thornleys' acts of false patent marking have caused damage to Yearsley and have caused a competitive injury to Yearsley, and Yearsley is entitled to recover from the Thornleys the damages sustained by Yearsley as a result of the Thornleys' wrongful acts and/or violations of 35 U.S.C. §§ 287 and/or 292 in an amount to be proven at trial.

27. As a consequence of the false patent marking complained of herein, Yearsley has been irreparably damaged to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless the Thornleys are enjoined by the Court from committing further acts of false patent marking.

## SECOND CLAIM FOR RELIEF
### False Advertising and/or Deceptive Trade Practices Under the Lanham Act and/or Common Law

28. Yearsley realleges and incorporates by reference all of the foregoing paragraphs.

29. Yearsley competes directly with the Thornleys in the marketplace.

30. The Thornleys mark or have marked its Human Art Theory, the packaging containing the Human Art Theory, and/or the marketing materials for the Human Art Theory as having patent protection.

31. The Thornleys do not have and have never had patent rights in and to its Human Art Theory.

32. Moreover, the Thornleys did not have patent rights in and to the Human Art Theory when they began falsely marking the Human Art Theory.

33. As such, the Thornleys' public assertion or notice of patent rights in and to its Human Art Theory is false and/or misleading.

34. The Thornleys' false or misleading public assertion of patent rights in and to its Human Art Theory has deceived, or has the capacity to deceive, a substantial portion of the intended audience and/or the intended distributors and/or consumers of Yearsley's Social Core Theory product, as well as the intended distributors and/or consumers Yearsley's Social Core Theory product.

35. The Thornleys' false or misleading public assertion of patent rights in and to its Human Art Theory is material inasmuch as it is likely to influence purchasing decisions by relevant distributors and/or consumers.

36. The Thornleys have placed its false or misleading public assertion of patent rights in and to its Human Art Theory in interstate commerce by virtue of selling the Human Art Theory, the packaging and/or marketing which bears the false or misleading statement at issue, into interstate commerce.

37. The Thornleys are liable for false advertising and/or deceptive trade practices under the Lanham Act and/or common law.

38. The Thornleys' acts of false advertising have caused damage to Yearsley, or have otherwise caused a competitive injury to Yearsley in the form of either a direct diversion of sales

or by lessening the goodwill associated with Yearsley's Social Core Theory product, and Yearsley is entitled to recover from the Thornleys the damages sustained by Yearsley as a result of the Thornleys' wrongful acts in an amount to be proven at trial.

39. As a consequence of the false advertising complained of herein, Yearsley has been irreparably damaged to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless the Thornleys are enjoined by the Court from committing further acts of false advertising.

40. One or more of the Thornleys' acts of false advertising have been willful further entitling Yearsley to enhanced damages and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF
**(Defamation)**

41. Yearsley realleges and incorporates by reference all of the foregoing paragraphs.

42. The Thornleys published the False Statement in Utah.

43. The False Statements are completely false and have no basis in fact.

44. The Thornleys have published the False Statements to Yearsley clients and persons who have promoted Yearsley, such as Good Day Utah.

45. The Thornleys published the False Statements with malice and for the sole purpose of hindering the success of a competitor in her industry.

46. Yearsley has suffered damages as a result of the publication of the False Statements.

47. Additionally, the Sale Statement published by the Thornleys constitutes as defamation *per se* as the words, among other things, charge conduct that is incompatible with the exercise of a lawful business, trade, profession or office.

48. Indeed, because of the injurious character of the False Statements published by the Thornleys, damages can be presumed from the words alone.

49. As a direct and proximate result of the conduct described herein, Yearsley has been damaged by the Thornleys in an amount to be determined at trial. In addition, the actions and threats by the Thornleys described herein are repugnant and were made with malice and with the intent to cause harm to Yearsley.

50. In addition to any special damages, Yearsley is entitled to presumed damages in an amount to be determined by the Court plus an award of punitive damages against the Thornleys to deter this type of conduct from occurring in the future.

51. Yearsley, for the reasons stated herein, is also entitled to a preliminary and permanent injunction against the Thornleys to forbid them from ever publishing the False Statements, or anything similar thereto, in the future.

**FOURTH CLAIM FOR RELIEF**
**(Intentional Interference with Economic Relations)**

52. Yearsley realleges and incorporates by reference all of the foregoing paragraphs.

53. Yearsley has established contracts and economic relationships with clients and persons with the ability to promote Yearsley's work.

54. The Thornleys have intentionally interfered with Yearsley's economic relationships.

55. As described herein, this interference was undertaken by improper means, including but not limited to defamatory misrepresentations and false marking.

56. As a direct and proximate result of the Thornleys' interference, Yearsley has been damaged in an amount to be determined at trial, plus the attorney fees and costs incurred in

having to bring this action.

57. Further, Yearsley has suffered and will continue to suffer irreparable harm entitling Yearsley to temporary, preliminary, and permanent injunctive relief.

58. The acts undertaken by the Thornleys described above were undertaken intentionally, maliciously and/or recklessly, and entitle Yearsley to an award of punitive or exemplary damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff prays for judgment as follows:

A. Under the First Claim for Relief, an award of damages against the Thornleys account for and pay to Yearsley all damages caused by its false patent marking; and pre-judgment and post-judgment interest on the damages caused to it by reason of the Thornleys' false patent marking;

B. Under the Second Claim for Relief, an award of damages against the Thornleys in an amount to be determined at trial, plus costs and attorneys' fees, and an award of punitive damages against the Thornleys for their outrageous conduct

C. Under the Third Claim for Relief, an award of damages against the Thornleys in an amount to be determined at trial, plus costs and attorneys' fees, and an award of punitive damages against the Thornleys for their outrageous conduct;

D. Under the Fourth Claim for Relief, an award of damages against the Thornleys in an amount to be determined at trial, plus costs and attorneys' fees, and an award of punitive damages against the Thornleys for their outrageous conduct;

E. Under the First, Second, Third, and Fourth Claims for Relief, a preliminary and permanent injunction to prevent misconduct from occurring in the future;

F. Any additional relief as allowed by this Court.

DATED this 3rd day of June, 2016.

**KIRTON McCONKIE**

By: /s/ James Burton
 James T. Burton
 Shawn T. Richards
 Analise Q. Wilson
  *Attorneys for Plaintiff*